NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2736
_____

BRIAN McCLUSKEY,
                              Appellant

v.

SUPERINTENDENT MARDI VINCENT;
HEALTH CARE ADMINISTRATOR ANNETTE KOWALEWSKI;
GRIEVANCE COORDINATOR ELIZABETH NIGHTINGALE;
INFECTION CONTROL NURSE SHARON SEAN, RN;
MEDICAL DIRECTOR JAWAD SALAMEH;
DOCTOR BERNARD McQUILLIAN;
DOCTOR JOHN ROBINSON;
DOCTOR JAMES CARAMANNA;
DOCTOR RASHADA MAHMUD;
DOCTOR JAMES SIOMA;
PHYSICIANS ASSISTANT BARBRA HAUTZ

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-09-cv-00215)
Honorable Cathy Bissoon

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 13, 2012

Before:  SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Filed: November 30, 2012)

_____

OPINION OF THE COURT

_____

SCIRICA, *Circuit Judge*.

Plaintiff Brian McCluskey, a former prisoner of the Commonwealth of Pennsylvania, appeals the Magistrate Judge's[1] grant of summary judgment on his claims of deliberate indifference to serious medical needs and unconstitutional prison conditions. He claims unsanitary prison conditions caused him to become infected with Methicillin-resistant Staphylococcus aureus (MRSA), and that the prison doctors failed to provide him with adequate medical care for his condition. We will affirm.

I.

McCluskey was a prisoner at SCI-Laurel Highlands, a state correctional facility in Somerset, Pennsylvania. In September 2007, he broke out in an itchy rash after changing cell blocks. Other inmates in his cell also experienced itchy rashes. Over approximately the next nine months, McCluskey was examined and treated by numerous prison doctors as his condition evolved and worsened. He experienced severe pain throughout his course of treatment.

From September to November 2007, McCluskey was examined and treated on numerous occasions by Drs. John Robinson, Bernard McQuillian, and James Sioma. McCluskey was diagnosed with acute cellulitis and Tinea Corporis and treated with a variety of creams and steroids. His rash, although showing some improvement at times,

---

[1] The Honorable Cathy Bissoon presided over this matter in the District Court as a United States Magistrate Judge. On October 20, 2011, she was appointed a United States District Judge for the Western District of Pennsylvania.

eventually spread, and he was given new medicines in response. He requested a biopsy, but his request was denied.

In late November, McCluskey developed a rash and an ulcer on his left foot. As a result, part of his heel had to be removed. He continued to experience considerable pain and was prescribed Darvocet instead of Tylenol. His skin problems worsened. On January 16, Dr. James Caramanna, Dr. Jawad Salameh, and Physician Assistant Barbara Hautz diagnosed McCluskey with folliculitis dermatitis, and added to his prescriptions.

In February, McCluskey developed lesions on his abdomen, thighs, and legs. Dr. Salameh ordered a culture on an open lesion and the culture report showed that McCluskey had MRSA.[2] Dr. Rashida Mahmud prescribed an antibiotic and McCluskey was continued on other medications.

In early March, McCluskey developed four large boils. On March 4, Dr. Salameh and Hautz performed an incision and drainage on one of the boils. The treatment was ineffective and, on March 7, McCluskey was transferred to Somerset Hospital, where the four boils were incised, drained, and debrided. McCluskey returned to the prison the next day, and over the next month he received various medications and had his dressings changed regularly.

Throughout April and May, McCluskey continued to develop abscesses, some of which swelled and broke open. In mid-June, McCluskey saw a dermatologist via a video

_____

[2] MRSA is a "drug-resistant strain of staph bacteria" that "is only susceptible to a limited number of antibiotics." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 421 (3d Cir. 2006).

link, and the dermatologist recommended a biopsy and Doxycycline. The biopsy revealed mild spongiotic dermatitis.

On June 23, Physicians Assistant Hautz noted a large abscess on McCluskey's left thigh with drainage and an open cavity to muscle. On June 30, Dr. McQuillian noted multiple large abscesses, and Dr. Salameh transferred McCluskey to Somerset Hospital that same day. The hospital report noted McCluskey had an abscess the size of a softball and several other smaller abscesses. A surgeon performed an incision and drainage procedure on the large abscess.

McCluskey filed three prison grievances complaining about the treatment for his skin problems, asserting the medical staff failed to properly treat his skin conditions and waited until he was in great pain to treat him. The grievances were reviewed at various stages in the process by Grievance Coordinator Elizabeth Nightingale, Grievance Officer Annette Kowalewski, and Superintendant Mardi Vincent. McCluskey withdrew one grievance and the other two were denied on the ground that McCluskey had been under the continuous care of the medical staff and that there had been no medical negligence.

McCluskey filed a pro se complaint under 42 U.S.C. § 1983 alleging the medical treatment he received was constitutionally inadequate and that the prison conditions that caused him to become infected with MRSA were unconstitutional. He named as defendants several prison employees: Superintendant Vincent, Nightingale, Kowalewski, and Sharon Dean (the "Prison Defendants") and several of his medical providers: Dr. Salameh, Dr. McQuillian, Dr. Robinson, Dr. Caramanna, Dr. Mahmud, Dr. Sioma, and P.A. Hautz (the "Medical Defendants"). The Prison Defendants and the Medical

4

Defendants filed separate motions for summary judgment and the Magistrate Judge, who was presiding in the case by consent, granted the motions. McCluskey filed a timely appeal.[3]

II.[4]

A.

McCluskey argues there was sufficient evidence for a jury to conclude defendants violated his Eighth and Fourteenth Amendment rights to receive adequate medical care while in prison, and thus it was error for the Magistrate Judge to grant the motions for summary judgment as to this claim. We review the grant of summary judgment de novo, drawing all inferences in favor of the nonmoving party. *N.J. Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 326 (3d Cir. 2007) (citation omitted). Summary judgment is appropriate when there is no genuine dispute of material facts and defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Deliberate indifference requires a defendant to have actual knowledge of a serious risk to a prisoner and to disregard that risk. *Id.* at 837. "Deliberate indifference may be shown by 'intentionally denying or delaying medical care.'" *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104

---

[3] McCluskey requested appointment of counsel on appeal. We granted this request and appointed pro bono counsel from Schnader Harrison Segal & Lewis LLP. We express gratitude for their efforts.

[4] The Magistrate Court had jurisdiction under 28 U.S.C. §§ 636(c)(1), 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291.

5

(1976)). "We have found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; . . . (3) prevents a prisoner from receiving needed or recommended medical treatment;" and (4) "where the prison official persists in a particular course of treatment in the face of resultant pain and risk of permanent injury." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations and quotation marks omitted). But it "is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Id.*

McCluskey first argues the Medical Defendants were deliberately indifferent to his MRSA, a serious medical need, by failing to diagnosis it for several months, including refusing his request for a biopsy and failing to order a dermatology consult. The record shows the Medical Defendants diagnosed McCluskey with various other skin conditions before he was diagnosed with MRSA. There is no evidence that these diagnoses were incorrect. And there is no evidence beyond McCluskey's own speculation that he even had MRSA for a significant period of time before it was diagnosed. While McCluskey complains his doctors should have ordered a biopsy or dermatology consultation sooner, "the question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and "does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 106. There is no evidence the decision not to order an immediate biopsy or dermatology consultation was made with deliberate indifference to McCluskey's condition or was based on anything other than

6

medical judgment. At best, McCluskey has presented evidence of a misdiagnosis and possible medical malpractice, and this is insufficient. *Rouse*, 182 F.3d at 197.

McCluskey next argues the Medical Defendants violated his constitutional rights by persisting in a course of ineffective treatment during the months before he was diagnosed with MRSA. But there is no evidence that the Medical Defendants' diagnoses were incorrect or that their prescribed treatments were unreasonable or medically unsound. And the record shows the various Medical Defendants adjusted McCluskey's treatment depending on the effectiveness of the prior treatment and the changing symptoms presented by McCluskey. Importantly, there is no evidence any of the Medical Defendants intended to cause him pain or were deliberately indifferent to his pain. *Cf. White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) (holding plaintiffs had stated a claim for deliberate indifference by alleging the defendant had "wantonly inflicted unnecessary pain on prisoners"). Once again, the evidence is insufficient to rise above the level of medical malpractice, if any.

McCluskey next contends the Medical Defendants violated his rights by failing to promptly send him to the hospital for treatment of his large, painful boils. But he was provided treatment for his boils by the Medical Defendants, and there is no evidence to suggest that the treatment provided was inappropriate or based on anything other than sound medical judgment. There is no evidence any defendant knew the treatment provided for the boils posed a serious risk to McCluskey's health. And when the treatment ultimately proved ineffective, the Medical Defendants sent McCluskey to the hospital for surgery. There is no evidence the Medical Defendants delayed in transferring

him there with an intent to inflict pain, for a non-medical reason, or with deliberate indifference to his condition. Again, the evidence at best shows medical malpractice, if any, not deliberate indifference. Accordingly, the Magistrate Judge did not err by granting summary judgment to the Medical Defendants on McCluskey's claim based on inadequate medical treatment.

McCluskey also contends the Prison Defendants were deliberately indifferent to his MRSA because they failed to respond appropriately to his grievances, in which he informed them he was not receiving adequate medical treatment. But non-physician defendants cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Accordingly, we will affirm the entry of summary judgment on this claim in favor of the Prison Defendants.

B.

McCluskey also challenges the Magistrate Judge's grant of summary judgment on his claim for unconstitutional prison conditions. In order for conditions of confinement to be unconstitutional, they must be shown to be cruel and unusual under the Eighth Amendment, meaning the evidence must reveal widespread deprivation of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious

8

harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

McCluskey contends defendants violated his constitutional rights by subjecting him to unsanitary conditions of confinement which caused him to contract MRSA from another inmate. He points to evidence that an inmate who previously slept on his mattress had MRSA, and the fact that several inmates had other skin infections. He argues a reasonable jury could conclude from this evidence that the defendants were deliberately indifferent to his risk of contracting MRSA.

But there is no evidence that any defendant knew that McCluskey was being given a bed once used by a prisoner with MRSA. Moreover, McCluskey acknowledges that the mattress was disinfected pursuant to prison policy, and has presented no evidence that this action amounted to an unreasonable or deliberately indifferent response to the risk of infection. Finally, that other inmates had other skin infections does not, without more, demonstrate the defendants were deliberately indifferent to McCluskey contracting MRSA. Accordingly, we will affirm the grant of summary judgment on McCluskey's claim of unconstitutional conditions.

## C.

Finally, McCluskey argues the Magistrate Judge erred in failing to provide him more time to conduct discovery under Fed. R. Civ. P. 56(d)[5] before ruling on the motions

---

[5] Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow

for summary judgment. Rule 56(d) requires "that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Phila.*, 855 F.2d 136, 139-40 (3d Cir. 1988) (citation omitted). We review the denial of a Rule 56(d) request for abuse of discretion. *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002) (citation omitted).

In his responses to the motions for summary judgment, McCluskey stated that his discovery request for a list of inmates with infections had been denied, and that once he has time to compel discovery, he will have evidence to prove his claims at trial. He did not request more time to conduct discovery or ask the court to delay ruling on the motions.

McCluskey did not file an affidavit in support of his "request" for more discovery, "and therefore, as a procedural matter alone, [he] has failed to comply" with Rule 56(d). *Dowling*, 855 F.2d at 140. Moreover, his "request" was ambiguous at best. And he did not explain why he had failed to obtain the discovery he sought. He only stated his request for the list of inmates with infections was denied, without explaining how or to whom he made the request, why it was denied, or why he was entitled to a list that likely contained confidential details about other inmates' medical conditions. Accordingly, we see no abuse of discretion.

---

time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

III.

For the foregoing reasons, we will affirm the grant of summary judgment to all defendants.